UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| D.H., | Case No. 20-cv-07230-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMNT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| ANDREW SAUL, | |
| Defendant. | |
| | Re: ECF Nos. 14, 15 |

## INTRODUCTION

The plaintiff, D.H., seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his claim for social-security disability insurance (SSDI) benefits under Title II of the Social Security Act.[1] The plaintiff moved for summary judgment, the Commissioner opposed the motion and filed a cross-motion for summary judgment, and the plaintiff filed a reply.[2] Under Civil Local Rule 16-5, the matter is submitted for decision by this court without oral argument. The court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion, and remands for further proceedings.

---

[1] Compl. – ECF No. 1; Mot. – ECF No. 14. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF–generated page numbers at the top of the documents.

[2] Mot. – ECF No. 14; Cross–Mot. – ECF No. 15; Reply – ECF No. 16.

ORDER – No. 20-cv-07230-LB

STATEMENT

1. **Procedural History**

The plaintiff filed an application for SSDI benefits on October 23, 2018.[3] The Commissioner denied his claim on February 22, 2019, and again on June 4, 2019.[4] On June 18, 2019, the plaintiff asked for a hearing before an Administrative Law Judge (ALJ).[5] On February 24, 2020, the ALJ held a hearing and heard testimony from a vocational expert and the plaintiff.[6] The ALJ issued an unfavorable decision on March 27, 2020.[7] On September 1, 2020, the Appeals Council denied the plaintiff's request for review, and the ALJ's decision became the final administrative decision.[8] The plaintiff filed this action on October 15, 2020 and the parties each moved for summary judgment.[9] All parties consented to the undersigned's jurisdiction.[10]

2. **Medical Records**

The plaintiff contended that he is disabled because of an organic traumatic brain injury that caused problems with his memory, concentration, and ability to multitask and process information.[11]

The following records were submitted: (1) medical records from Maui Memorial Medical Center;[12] (2) records from Kaiser Permanente Hawaii;[13] (3) records from speech therapy

---

[3] AR 174–75. Administrative Record (AR) citations refer to the page numbers in the bottom right-hand corner of the Administrative Record.

[4] AR 91–95; 101–06.

[5] AR 108–09.

[6] AR 31–60.

[7] AR 12–30.

[8] AR 1–6.

[9] Compl. – ECF No. 1; Mot. – ECF No. 14; Cross–Mot. – ECF No. 15.

[10] Consents – ECF Nos. 6, 8.

[11] AR 61–62, 226.

[12] AR 318.

[13] AR 376.

sessions;[14] (4) medical records from consultative psychologist, Aparna Dixit, PsyD.;[15] (5) medical records from Richard J. McCarthy, M.D.;[16] and (6) medical records from neurologist Sirisha Nandipati, M.D.[17]

Because the plaintiff challenges the ALJ's finding that his testimony was inconsistent with the medical record, this order recounts the relevant medical opinions.

### 2.1   Maui Memorial Medical Center – Examining

On December 14, 2017, the plaintiff was transported by a helicopter to Maui Memorial Hospital in Hawaii. The plaintiff was riding a donkey when he was bucked off. He landed on the ground and sustained a head injury. The doctors noted that the plaintiff "arrive[d] awake and alert but [was] amnestic to the events that preceded his visit here."[18] The plaintiff suffered facial fractures, a closed head injury, and cerebral concussion.[19] A CT scan revealed no visible brain damage, but the doctors "admitted [the plaintiff] to the ICU for frequent neuro checks and observations."[20] On June 22, 2018, Dr. Janelle Amer noted that the plaintiff's co-workers stated that the plaintiff "cannot keep working as he is not capable," and that the plaintiff "repeats things," "forgets things," and "sometimes cannot follow a conversation."[21]

### 2.2   Richard McCarthy, M.D. – Treating Physician

Richard McCarthy, M.D. was the plaintiff's neurologist and treating physician from July 2018 to February 2019.[22] Dr. McCarthy ordered a brain MRI on July 27, 2018. The MRI showed two

---

[14] AR 380–423.
[15] AR 553
[16] AR 558–61.
[17] AR 562–87.
[18] AR 323.
[19] AR 325.
[20] *Id.*
[21] AR 424.
[22] AR 559, 563.

ORDER – No. 20-cv-07230-LB                    3

peripheral microhemorrhages in the anterior and posterior right frontal lobe without associated edema, which "may reflect subtle traumatic brain injury."[23]

In August 2018, Dr. McCarthy found that the plaintiff had executive dysfunction due to the fall, and that he had residual limitations including an inability to multi-task, emotional liability, and decreased short-term memory. Dr. McCarthy opined that the plaintiff could not work as a construction manager.[24]

### 2.3   Sirisha Nandipati, M.D. – Treating Physician

In February 2019, Sirisha Nandipati, M.D. became the plaintiff's treating physician after Dr. McCarthy moved to Washington, D.C.[25] On February 4, 2019, Dr. Nandipati noted that she did not expect improvement in the plaintiff's functional abilities and marked his prognosis for improvement as "poor."[26]

On December 10, 2019, Dr. Nandipati diagnosed the plaintiff with cognitive disorder.[27] She opined that the plaintiff "has permanent cognitive deficits despite cognitive rehab" and that an improvement of his condition would be minimal since his injury was over a year prior.[28]

On December 16, 2019, Dr. Nandipati opined that the plaintiff had marked limitations in (1) remembering work-like procedures, (2) maintaining regular attendance and being punctual, (3) working in coordination with or proximity to others without being unduly distracted, (4) completing a normal workday and workweek without interruptions from psychologically-based symptoms, (5) performing at a consistent pace without an unreasonable number and length of rest periods, (6) carrying out detailed instructions, (7) setting realistic goals or making plans independently of others, and (8) dealing with the stress of semi-skilled and skilled work.[29] Dr.

---

[23] AR 408.
[24] AR 560.
[25] AR 563.
[26] *Id*.
[27] AR 666.
[28] *Id.*
[29] AR 585–86.

ORDER – No. 20-cv-07230-LB          4

Nandipati further opined that the plaintiff had an extreme restriction in maintaining attention for two-hour segments and noted that the plaintiff's wife "has to manage all forms, bills, [and] higher-level tasks" and that "neuropsych testing showed impaired verbal recall, impaired ADL's with communication, shopping, money management."[30]

### 2.4 Aparma Dixit, Psy.D. – Examining Psychologist

On January 24, 2019, Aparma Dixit, Psy.D. conducted a psychological consultative examination of the plaintiff. The plaintiff presented with mildly anxious mood and congruent affect. Dr. Dixit opined that the plaintiff had an unimpaired memory and was able to perform simple calculations and serial 7s. Testing revealed the plaintiff's full-scale IQ to be 84, which fell within the low-average range. His Verbal Comprehension Index, Perceptual Reasoning Index, Working Memory Index, and Processing Speed Index all fell within the low-average range. Dr. Dixit noted that the evaluation was limited in scope, based on only one session, in a structured environment, with pre-authorized tests.[31]

### 2.5 Speech Therapy

On June 29, 2018, the plaintiff attended a speech therapy outpatient cognitive linguistic evaluation.[32] The therapist noted that the plaintiff had "a mild-moderate cognitive linguistic impairment [consistent with] head injury and most notable in the following areas: attention, short term memory, auditory processing (likely due to reduced memory and attention), pragmatics, and executive function."[33] On August 21, 2018, the therapist noted that the plaintiff's wife was concerned about a "contusion" revealed in an MRI eight months after the accident, and the plaintiff and the doctor discussed reducing his work hours.[34]

---

[30] AR 585.

[31] AR 553–56.

[32] AR 421.

[33] AR 423.

[34] AR 395.

### 3. Administrative Proceedings

#### 3.1   Disability-Determination Explanations

During the administrative process, non-examining doctors conducted two disability determination explanations, one related to the plaintiff's initial claim for disability and a second at the reconsideration level.[35]

At the initial level, Catharina Eeltink, Ph.D., determined the plaintiff's impairments consisted of severe traumatic brain injury and severe anxiety and obsessive-compulsive disorders. Dr. Eeltink opined that the plaintiff's statements about his symptoms were "partially consistent" with his medical record and noted that he was able to do the following tasks: (1) make simple meals; (2) household chores; (3) drive; (4) shop; (5) handle funds; (6) watch TV; (7) woodwork; (8) yard work; (9) have dinner with friends; and (10) walk three and a half miles.[36]

Dr. Eeltink analyzed the plaintiff's residual-functional capacity (RFC) and found that he was moderately limited in his ability to do the following: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) complete a normal workday and workweek without interruptions from psychologically-based symptoms; and (5) respond appropriately to changes in the work setting.[37] Because the plaintiff's condition was not severe and he could adjust to other work, Dr. Eeltink concluded he was not disabled.[38]

On reconsideration, Janet Anguas-Keiter, Psy.D. and A. Dipsia, M.D. found the following impairments to be severe: (1) traumatic brain injury; (2) reconstructive surgery of a weight bearing joint; and (3) anxiety and obsessive-compulsive disorders.[39]

---

[35] AR 61–90.

[36] AR 67–69.

[37] AR 70–71.

[38] AR 73.

[39] AR 81.

Dr. Anguas-Keiter assessed the plaintiff's mental RFC and found the same moderate limitations that Dr. Eeltink identified at the initial level.[40] Dr. Dipsia assessed the plaintiff's physical RFC and found that he could occasionally lift or carry 50 pounds, frequently carry 25 pounds, stand or walk for a total of 6 hours, and sit for a total of 6 hours in an 8-hour workday. The plaintiff had postural limitations but could frequently climb ramps, stairs, ladders, ropes, and scaffolds, kneel, crouch, and crawl, and he had no limits with balancing.[41] The doctors determined that the plaintiff was not disabled.[42]

### 3.2 Administrative Hearings

The ALJ held a hearing on February 24, 2020.[43] The plaintiff and vocational expert (VE) Gretchen Bakkenson were present and testified.

### 3.2.1 Plaintiff's Testimony

The plaintiff testified as follows. In December 2017, he fell while riding a mule and sustained a head injury. He was taken to a hospital and received facial reconstruction surgery. He cannot remember anything that occurred for a three-week period after his accident. Before his accident, he was a construction project manager and he oversaw between one-hundred and two-hundred projects a year. He worked with property owners to schedule and design projects, and he prepared and executed contracts and sub-contracts from "cradle to grave." He returned to work shortly after the accident, but his workload "started to par back" in June 2018, and he stopped working in September 2018.[44]

His family initially believed that he had a severe concussion. He began to experience issues with his ability to focus, concentrate, and multitask, and he is unable to remember things without writing them down. An MRI revealed that his brain injuries were more extensive than previously thought. He testified that he had no physical limitations and that he "might be able to" do simple

---

[40] AR 85–87.

[41] AR 84–85.

[42] AR 89.

[43] AR 33–60.

[44] AR 38–42.

ORDER – No. 20-cv-07230-LB                 7

and repetitive tasks, but that he would need an "alarm or something" to remind him to complete tasks.[45]

### 3.2.2 VE's Testimony

VE Gretchen Bakkenson testified at the hearing. She categorized the plaintiff's prior job as a construction project manager as light work.[46]

The ALJ posed the first hypothetical to the VE:

> an individual the claimant's age, education, and work experience who's able to perform work at the medium exertion level. He can lift or carry 50 pounds occasionally and 25 pounds frequently. He can sit, stand, or walk, six hours in an eight-hour workday. He can frequently climb ramps, stairs, ladders, ropes, or scaffolds. He can frequently stoop, kneel, crouch, or crawl, is able to understand, remember, and carryout short, simple, instructions. He would need to work in a stable work environment, meaning few changes, if any in the day-to-day work setting. And he can do low-stress work, defined as simple, routine work in an environment free of fast-paced production requirements.

The VE replied that the individual would be unable to perform the claimant's past work. The ALJ ask if there were other jobs the individual could perform, and the VE replied that the following jobs were available: hospital housekeeper, cleanup worker or janitor, and order picker (also known as warehouse worker).[47]

The ALJ posed a second hypothetical to the VE. In addition to the conditions of the previous hypothetical, "the individual can work in proximity to others but with only occasional interaction with others and no tandem jobs requiring cooperation with other workers to complete the tasks." The VE responded that warehouse jobs and janitorial jobs would be appropriate, but that hospital housekeeping jobs would erode to 40,000 available jobs because they require interaction with other housekeepers.[48]

---

[45] AR 42–50.

[46] AR 50, 52.

[47] AR 54–56.

[48] AR 56.

ORDER – No. 20-cv-07230-LB          8

The ALJ posed a third hypothetical. In addition to the conditions of the second hypothetical, the individual "would require two unscheduled five-minute breaks – one in the morning and one in the afternoon. The VE replied that the same jobs would be available.[49]

The plaintiff's counsel questioned the VE. To all of the ALJ's hypotheticals, he added that the individual "could not perform at a consistent pace." The VE responded that there would be no work available to the individual if his inability to perform at a consistent pace was "habitual and it reduced productivity." Counsel also added that the individual "could not maintain attention and concentration for two-hour segments," and the VE testified that no jobs would be available.[50]

### 3.3 ALJ Findings

The ALJ analyzed the five-step process to determine whether the plaintiff was disabled and concluded that he was not.

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset date on September 28, 2018.[51]

At step two, the ALJ found that the plaintiff's traumatic brain injury was a severe impairment.[52]

At step three, the ALJ found that the plaintiff's condition did not meet or medically equal the severity of a listed impairment.[53]

Before reaching step four, the ALJ determined the plaintiff's RFC:

> The claimant has the [RFC] to perform medium work as defined. . . except he can lift or carry 50 pounds occasionally and 25 pounds frequently. He can sit, stand, or walk six hours in an eight-hour workday. He can frequently climb ramps, stairs, ladders, ropes or scaffolds. He can frequently stoop, kneel, crouch, or crawl. He is able to understand, remember, and carry out short, simple instructions. He would need to work in a stable work environment, meaning few changes, if any, in the day-to-day work setting. He can do low stress work, defined as simple, routine work in an environment free of fast paced production requirements. He can work in proximity to others, but with only occasional

---

[49] AR 57.

[50] AR 57–60.

[51] AR 17.

[52] *Id.*

[53] AR 17–19.

interaction with others, and no tandem jobs requiring cooperation with other workers to complete the task.[54]

At step four, the ALJ found that the plaintiff was unable to perform any past relevant work.[55]

At step five, the ALJ found that the following jobs were available to the plaintiff: (1) hospital cleaner; (2) industrial cleaner; and (3) stores laborer.[56]

The ALJ concluded that the plaintiff was "not disabled."[57]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## GOVERNING LAW

A claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

---

[54] AR 19–20.

[55] AR 24.

[56] AR 25.

[57] AR 25–26.

to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

> **Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(a)(4)(i).
>
> **Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(a)(4)(ii).
>
> **Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(a)(4)(iii).
>
> **Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(a)(4)(iv).
>
> **Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. See 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Hum. Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

# ANALYSIS

The plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons to reject the plaintiff's symptom testimony.[58] The court remands on this ground.

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112 (9th Cir. 2012). "First, the ALJ must determine whether [the claimant has presented] 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. (quoting *Vasquez*, 572 F.3d at 591). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id*. (cleaned up).

"At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Id*. (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (cleaned up). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); see, e.g., *Morris v. Colvin*, No. 16-CV-00674-JSC, 2016 WL 7369300, at *12 (N.D. Cal. Dec. 20, 2016).

The ALJ found the following about the plaintiff's testimony:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.[59]

---

[58] Mot. – ECF No. 14 at 7–11.

[59] AR 20.

The ALJ did not identify specifically what portions of the plaintiff's testimony were not credible or what medical evidence and other evidence in the record undermined his testimony. Although her decision summarized the plaintiff's medical record, she did not identify the portions of the record that were inconsistent with the plaintiff's symptom testimony.[60] This was not a specific, clear, and convincing basis for rejecting his testimony. *Burrell*, 775 F.3d at 1138. The court remands for consideration on this ground.

The court has "discretion to remand a case either for additional evidence and findings or for an award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citation omitted); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court.") (citation omitted). Generally, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (cleaned up); *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.").

Here, remand is appropriate to "remedy defects in the original administrative proceeding." *Garrison*, 759 F.3d at 1019 (cleaned up).

## CONCLUSION

The court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion, and remands for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: October 8, 2021

LAUREL BEELER
United States Magistrate Judge

---

[60] AR 20–22.